Case 1:16-cv-00064   Document 15   Filed on 07/25/17 in TXSD   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
July 25, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JESSIE MARIE ROSAS, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | Case No. 1:16-cv-64 | |
| § | | |
| NANCY A. BERRRYHILL, § | | |
| ACTING COMMISSIONER § | | |
| OF THE SOCIAL SECURITY § | | |
| ADMINISTRATION, § | | |
| Defendant. § | | |

**MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

The Court is in receipt of Jessie Marie Rosas's Complaint, and memorandum brief in support thereof, wherein she seeks review of the Social Security Administration ("SSA") Commissioner's final decision denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Dkt. Nos. 1, 13. Defendant, Nancy A. Berryhill, Acting Commissioner of the Social Security Administration (hereinafter, the "Commissioner"), asks the Court to affirm her decision, and deny Rosas's requested relief. *See* Dkt. Nos. 11, 14 at 11. The undersigned recommends that the Commissioner's decision be **AFFIRMED** and Rosas's claims be **DENIED**.

**I. JURISDICTION**

The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. BACKGROUND

On December 12, 2012, Rosas protectively filed an application for SSI, alleging an onset disability date of June 1, 2009. TR at 27, 187.[1] Rosas alleges physical and mental ailments such as spinal problems, fibromyalgia, rheumatoid arthritis, and depression. *See* TR at 191. In her functionality report, Rosas states, among other things, that these ailments cause her severe pain that affects her ability to perform daily tasks and movements such as bending, lifting, and walking. TR at 179-84. Rosas also claims that these ailments affect her concentration and ability to get along with others. *Id.*

The SSA initially denied Rosas's claim on February 22, 2013, and upon reconsideration on May 1, 2013. TR at 27, 105, 113. Rosas filed a request for a hearing, and Administrative Law Judge ("ALJ") Vadim Mozyrsky conducted an administrative hearing on August 6, 2014. TR at 27, 52. Attorney representative Becky Skidmore represented Rosas at the hearing. TR at 52. On November 3, 2014, the ALJ issued an opinion finding that Rosas was not disabled under § 1614(a)(3)(A) of the Social Security Act. TR at 37. Rosas appealed to the Appeals Council (hereinafter, the "Council"), which denied Rosas's request for review on February 3, 2016. TR at 1. On March 31, 2016, Rosas timely filed her Complaint challenging the Commissioner's final decision. Dkt. No. 1.

---

[1] The Commissioner filed a certified transcript of the underlying record in this case. *See* Dkt. No. 12. Citations to the transcript use the abbreviation "TR" and the page number.

### III. STANDARD OF REVIEW

The Court's review of the Commissioner's final decision to deny benefits under 42 U.S.C. § 405(g) is limited to two inquiries: (1) whether the proper legal standards were used in evaluating the evidence; and (2) whether there is substantial evidence in the record as a whole to support the decision that the claimant is not disabled as defined by the Act. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Evidence is considered substantial if it is relevant and sufficient enough for a reasonable mind to accept it as adequate to support a conclusion. *Legget v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). It is more than a scintilla, but less than a preponderance. *Id*. A no-substantial-evidence finding is appropriate only where no credible evidentiary choices or medical findings exist to support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). If the findings of the Commissioner are supported by substantial evidence in the record as a whole, the findings are conclusive and must be affirmed. *Brown*, 192 F.3d at 496.

Evidentiary conflicts are for the Commissioner, not the courts, to resolve. The Court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] own judgment for that of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Brown*, 192 F.3d at 496 (alternation in original) (quoting *Johnson v. Bowen*, 864 F.2d 340, 343). The Court's task is deferential judicial review of the Commissioner's disability decision, but not so deferential as to result in meaningless review. *Id*. Four elements of proof are weighed in determining if substantial evidence supports the

Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

## IV. ESTABLISHING DISABILITY

A claimant is not entitled to benefits under Titles II and XVI unless she is "disabled" as defined by the Act. 42 U.S.C. § 423(d)(1)(A); *Heckler v. Campell*, 461 U.S. 458, 459-61 (1983). The law and regulations governing benefits under both Titles are the same. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A sequential five-step approach is used to determine whether the claimant qualifies as disabled. *See* 20 C.F.R. § 404.1520(a)(4), § 416.920(a)(4).

At steps one through four, the claimant bears the burden of proving that: (1) they have not engaged in substantial gainful activity during the relevant period; (2) they have a severe impairment; (3) the impairment is either a listed impairment in the appendix to the regulations, or equivalent to a listed impairment; and, (4) if they do not have an impairment qualifying as a listed impairment or its equivalent,

---

[3] Because the law governing Title XVI SSI benefits and Title II disability insurance benefits is the same, this Report may refer to cases and regulations applicable to either Title, when not otherwise inappropriate.

the impairment or combination of impairments they do have still gives them a residual functioning capacity that prevents them from performing past relevant work. *Leggett*, 67 F.3d at 563, n. 2. Once the claimant meets her burden in the first four steps, the burden shifts to the Commissioner to establish that the claimant can perform substantial gainful employment available in the national economy. *Greenspan*, 38 F.3d at 236. The burden then shifts back to the claimant to rebut this finding. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). A determination at any step that the claimant is or is not disabled within the meaning of the Act ends the inquiry. *Leggett*, 67 F.3d at 564.

## V. DISCUSSION

Rosas presents four issues for review: (1) whether the ALJ erred in failing to address any functional impact of Rosas's alleged obesity; (2) whether the ALJ erred in determining Rosas's deficiencies in concentration, persistence, or pace in his RFC finding or his hypothetical question presented to the vocational expert; (3) whether the ALJ's RFC finding was supported by substantial evidence in the record; and (4) whether the ALJ failed to identify jobs that Rosas can perform and that exist in significant numbers in the national economy. *See* Dkt. No. 13 at 1.

**1) Issue 1**

In issue 1, Rosas argues that "significant evidence" exists that indicates Rosas is obese, and that this evidence should have put the ALJ "on notice" that obesity was an issue deserving of exploration. *See* Dkt. No. 13 at 10. Further, Rosas argues that the ALJ erred by failing to acknowledge the existence of her

alleged obesity, seek additional medical sources to determine its existence, and determine any effect it had on Rosas's other medical conditions. *Id.* at 11. In response, Defendant argues that the evidence shows Rosas is overweight, but that no medical source diagnosed her as obese or otherwise suggested her weight caused or had a substantial impact on her alleged functional limitations. Dkt. No. 14 at 4-5. As such, Defendant argues that the ALJ had no duty to investigate an issue not presented by Rosas or a medical provider, and that, in fact, the ALJ had a duty to not make assumptions about the severity or functional effect of obesity as combined with other medical impairments. *Id.*

In determining impairments at step 2, the SSA treats obesity much like other impairments in that obesity is "severe" when it significantly limits an individual's physical or mental ability to do basic work activities either by itself or in combination with other impairments. *See* Social Security Ruling ("SSR") No. 02-01p at *11. Obesity is not severe, however, when it is a "slight abnormality" or has no more than a minimal effect on the individual's ability to carry out basic work activities. *Id.* at 12. That said, the determination is individualized, and there is not a range of body mass indexes that are presumptively obese or not. *Id.*

Instead, the SSA will generally rely on the judgment of physicians that have examined the claimant and reported on the claimant's appearance, build, height, and weight, in making a diagnosis of obesity. *Id.* at 8. Absent such a diagnosis, the ALJ may request a medical source to opine as to obesity if the medical records show consistently high body weight or body mass index. *Id.* at 9. In most cases, however, the SSA will not incur the cost of a consultative examination simply to establish

obesity, and will instead rely only on the notes in the record. Finally, as stated by the Fifth Circuit, an ALJ's duty to investigate disabilities extends only to those argued by a claimant or clearly indicated by the medical record. *See Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016).

The ALJ, therefore, did not have a duty to investigate whether obesity significantly impacted Rosas's life, as she neither argued the impairment nor was it clearly indicated within her medical record. For example, in her functional report dated January 23, 2012, Rosas did not mention her daily life being impaired by obesity. *See* TR 179-86. Rosas also failed to list obesity or weight as an issue within her disability reports. *See* TR 187-205. Additionally, Rosas did not mention obesity or her weight while testifying at her hearing. *See* TR 57-81. The medical record further indicates a relatively stable weight that hovered around 165 pounds and a BMI of 30. *See*, *e.g.*, TR 232-34, 240-56, 290-323. However, the record lacks any mention of obesity by a medical provider other than Dr. Betancourt, who mentioned that Rosas appeared as "mildly obese," and once counseled Rosas that weight loss would aid in her pain management. *See id.*; TR 423, 425. In sum, the record did not clearly present obesity as an issue that would put the ALJ on notice that further investigation was necessary. For that reason, the ALJ had no obligation to inquire about Rosas's alleged obesity impairing her daily life.

**2) Issue 2**

In issue 2, Rosas argues that the ALJ did not reasonably incorporate her alleged moderate deficiencies in concentration, persistence, or pace, in the ALJ's RFC determination or the hypothetical question presented to the vocational expert.

*See* Dkt. No. 13 at 13-14. Defendant argues that the ALJ reasonably accounted for Rosas's limitations in concentration, persistence, or pace, through his recommendation that Rosas be limited to simple tasks with simple work-related decisions. Dkt. No. 14 at 5.

The Fifth Circuit has not addressed, in a reported case, what findings are sufficient for an ALJ to reasonably incorporate moderate difficulties in maintaining concentration, persistence, or pace, into a claimant's RFC. However, district courts have adopted the reasoning in the Fifth Circuit's unpublished *Bordelon* case, and applied it to similar situations. *See, e.g.*, *Cornejo v. Colvin*, 2013 U.S. Dist. LEXIS 80820 *23-27 (W.D.Tex. June 7, 2013). In Cornejo, the district court found that, in some situations, an ALJ's RFC finding that a claimant can perform simple, routine, one to two-step unskilled work instructions may reasonably incorporate moderate limitations in maintaining concentration, persistence, or pace. *Id.* at 25-26. An ALJ's finding, however, must be supported by substantial evidence that, despite the limitations, a claimant "retained an ability to understand, remember, follow, and carry out simple instructions." *Id.* at 26.

Here, the ALJ's RFC finding that Rosas can perform medium work, as defined in 20 C.F.R. § 416.967(c), with simple tasks requiring simple work-related decisions despite her moderate difficulties in maintaining concentration, persistence, or pace, is supported by sufficient evidence. *See* TR 31. The ALJ noted that Rosas is able to count change, read, watch television, crochet, go to church, follow instructions, and spend time with others. *See* TR 31, 182-84. Further, the ALJ noted that Rosas's thought processes were logical, that she showed good

insight, judgment, and recall, and that she is of average intelligence overall. *See* TR 31, 35, 410, 413, 820, 907, 909, 912, 918, 920, 922, 926. Finally, throughout the ALJ's opinion, the ALJ pointed to evidence that indicated Rosas had limited disturbances in life activities, decision-making, self-care, and living skills. *See* TR 31, 35, 387, 394, 398, 413. Thus, the ALJ cited sufficient evidence that Rosas retained an ability to understand, remember, and follow simple instructions to incorporate a moderate limitation in maintaining concentration, persistence, or pace, into Rosas's RFC.

### 3) Issue 3

In issue 3, Rosas argues that the ALJ lacked substantial evidence to make his RFC determination. *See* Dkt. No. 13 at 14-19. Specifically, Rosas argues that the ALJ relied on his lay opinion of the medical record, which caused him to mischaracterize the medical evidence. *Id.* at 19. Defendant argues that the ALJ adequately reviewed the medical evidence, which largely shows that although Rosas has some limitations, she retains the ability to perform a range of unskilled, medium work. *See* Dkt. No. 14 at 8-10.

An ALJ is responsible for weighing the medical evidence and determining a claimant's RFC supported by substantial evidence contained within the medical record. *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ's RFC finding may be supported by substantial evidence even if he does not specifically discuss all of the evidence that supports his decision or that was rejected when making his decision. *See Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994). Reviewing courts must defer to an ALJ's decision that is supported by substantial evidence,

even if the court would reach a different conclusion based on the evidence in the record. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Substantial evidence review, however, is not an uncritical "rubber stamp," and a court's review requires more than a simple search for evidence that supports an ALJ's findings. *Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984) (citations omitted). Instead, courts must scrutinize the medical record and take into account evidence that fairly detracts from the substantiality of the ALJ's findings. *Id.* That said, a court finding that the ALJ's determinations were not supported by substantial evidence is appropriate only if there is a "'conspicuous absence of credible evidentiary choices' or 'no contrary medical evidence'" supporting the ALJ's decision. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (citations omitted).

The ALJ found that, while Rosas had underlying physical and mental impairments that limited her functioning, the record did not support her allegations regarding the severity of her limitations. *See* TR 32. For example, the ALJ noted that Rosas alleges that her spinal problems, fibromyalgia, rheumatoid arthritis, and depression provide her great difficulties in her everyday life. *Id.* Rosas described her limitations causing her inability to walk without a walker, stand for long periods of time, lift more than her purse, and that her medication does not alleviate her back pain, which she rated as an eight out of ten. *See* TR 57-74. The ALJ noted, however, that Rosas had stated that she can wash dishes, crochet, and go to the store. *See* TR 32, 182-84. Further, the record shows that the claimant had normal musculature, no joint deformities or abnormalities, and no motor weakness.

TR 353, 357, 431, 455. Rosas's balance and gait were also normal, and her coordination and motor skills were unremarkable. *See* TR 33, 423-24, 433, 808, 810, 813. The ALJ cited more evidence from the record wherein Rosas reported that medication alleviated her pain, and that, despite reported pain, her ranges of motion were normal. *See* TR 34, 345, 353, 357. Finally, other reports appeared to show similar findings, which further showed that Rosas experienced no difficulty with ambulation, and that she was able to perform activities of daily living. *See* TR 33, 320, 387, 398, 426.

As for her mental impairments, the ALJ noted that Rosas appeared well-dressed, groomed, calm, cooperative, and friendly. *See* TR 35, 410, 413. Rosas's thoughts were logical, she showed good judgment and recall, and had average intelligence. *See* TR 35, 410, 413. Rosas apparently denied suffering headaches and depression, or having difficulty with concentration and coordination, and other mental symptoms, which differs strikingly from statements Rosas made in her disability functionality report and hearing testimony. *Compare e.g.*, 431, 441, 448 *with* 70-73, 184-85. Finally, Rosas did not display suicidal or homicidal ideation, and she denied having hallucinations. *See* TR 35, 386, 397, 410. In sum, the ALJ cited substantial evidence from the record to support his determination as to the severity of Rosas's limitations. *See* TR 31-36.

### 4) Issue 4

Finally, in issue 4, Rosas argues that the ALJ failed to identify jobs that exist in significant numbers in the national economy that Rosas can perform, because the vocational expert's testimony relied on outdated occupational standards that do not

properly reflect the performance requirements of those jobs as they exist today. Dkt. No. 13 at 20. More specifically, Rosas argues that the ALJ should have taken testimony regarding, or made his decision based upon, the "O*Net," which is a source pertaining to occupational information that is used by the Department of Labor. *Id.* at 20. Defendant argues that the ALJ may properly rely on the vocational expert's testimony in determining whether a claimant is disabled at step five, and that the vocational expert is obligated to use specific sources in providing his or her opinion. *See* Dkt. No. 14 at 10-11.

While unique, Rosas arguments are ultimately unpersuasive. Vocational experts and the SSA use multiple sources in determining whether a claimant may perform a job existing in the national economy. *See* 20 C.F.R. § 416.966(d); SSR No. 00-4p *4. However, the Dictionary of Occupational Titles ("DOT") is the primary source of information relied on by vocational experts and the SSA, and their testimony should generally be consistent with the occupational information contained therein. *See* SSR No. 00-4p at *4. When a vocational expert's testimony conflicts with the DOT, an ALJ is obligated, under his or her duty to fully develop the record, to obtain a "reasonable explanation" for the conflict before relying on the vocational expert's testimony to support a determination of disability. *Id.* at 4-5.

The SSA's stance has been upheld by the Fifth Circuit, which first held in *Carey v. Apfel* that, to rely on a vocational expert's testimony that even implicitly or indirectly conflicts with the DOT, an ALJ must have an adequate basis supported by the record. *See Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). While not squarely deciding the issue presented here, the *Carey* court made its holding only

after noting that: (1) the "DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job[;]" (2) DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job[;]" and (3) "'[t]he value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Id*. at 145. Thus, despite noting that the DOT is not the ultimate arbiter of occupational standards, the Carey court recognized the role of DOT classifications, requiring that an ALJ have an adequate basis before relying on vocational expert testimony differing from the information contained in the DOT. *See id*. at 145-46. This indicates that, while a vocational expert may take note of, and testify based upon, additional information contained in the "O*Net," for example, a vocational expert must testify based upon his independent expertise of occupational requirements and the DOT, unless an adequate basis that stems from the claimant's individual characteristics exists to deviate from the DOT. Apart from her request that the Court second-guess the ALJ's reliance on the otherwise lawful and correct testimony of the vocational expert, Rosas presents no other information that provides an adequate basis for a deviation from the DOT that would require the ALJ to elicit further vocational testimony.

*Carey* is also informative in another way. The *Carey* Court also held that a claimant may not challenge a perceived conflict of the vocational expert's testimony with the DOT as reversible error when the claimant did not deem the conflict

sufficient to merit "adversarial development" in the administrative hearing. *Id.* at 146-47. As discussed in *Carey*, a court's task is limited to making a determination as to whether substantial evidence in the record supports the ALJ's decision. *Id.* at 146. A court is not to reweigh the evidence, try issues de novo, or substitute its judgment for that of the Commissioner or the vocational expert. *Id.* Applying *Carey's* holding to this case, a claimant's failure to present available information to the ALJ or vocational expert, and elicit testimony in response, cannot be used against an ALJ's decision to rely on vocational expert testimony that does not otherwise deviate from the DOT or does not otherwise conflict with, or deviate from, the law. Assuming, arguendo, that the vocational expert should have used another source in formulating his opinion, and if Rosas felt that the vocational expert's testimony improperly failed to use that additional source, she could have presented evidence and elicited testimony of the "O*Net" occupational standards at the administrative hearing. However, Rosas failed to elicit such testimony or present any evidence. *See* TR 52-82. In sum, as discussed in detail above, the ALJ's determination is supported by substantial evidence in the record and comports with the proper legal standards. Therefore, it is recommended that the Court AFFIRM the Commissioner's decision, and DENY Rosas's claims.

## VI. RECOMMENDATION

For the reasons above, it is recommended that the Commissioner's decision be **AFFIRMED** and Rosas's claims be **DENIED**.

## VII. NOTICE TO PARTIES

A party's failure to file written objections within fourteen days after being served with a copy of the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions that the district court accepts, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Signed on this 25th day of July, 2017.

_____
**Ignacio Torteya, III**
**United States Magistrate Judge**